Estate of William H. Kern, deceased.   Appeal of Hood Gilpin, Executor of the Last Will and Testament of William H. Kern, deceased.

$$\begin{array}{c|c} \overline{176} & \overline{373} \\ 181 & 89 \\ \hline \overline{176} & 373 \\ 203 & {}^1197 \\ \hline \overline{176} & \overline{373} \\ 35\ SC & {}^2282 \end{array}$$

*Attorney in fact—Powers of—Cannot use property of principal except in his business.*

An attorney in fact can lawfully use the property of his principal only in the business of the principal. The use of such property for the payment of the debt of any other person than the principal is not authorized by the power.

Where one accepts from an attorney in fact property which he knows to be that of the principal, transferred by virtue of the power of attorney after the death of the principal, in payment of debts owing by others than the principal, he cannot retain the property against the representatives of the principal.

*Attorney in fact—Revocation by death.*

Death works a revocation of a simple power of attorney, and vests the title of the decedent in his executor or administrator.

Argued April 8, 1896.   Appeal, No. 238, Jan. T., 1896, by Hood Gilpin, executor, etc., of Wm. H. Kern, deceased, from decree of O. C. Phila. Co., April T., 1893, No. 248, dismissing his petition asking for a decree that Richard F. Loper be required to account for certain stocks.   Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ.   Reversed.

Petition by Hood Gilpin, executor of the last will and testament of W. H. Kern, deceased, asking for a citation to Richard F. Loper, a creditor of the estate of said William H. Kern, to show cause why he should not deliver to petitioner certificates for sixty-six shares of the capital stock of the Knickerbocker Ice Company in his possession, belonging to said W. H. Kern, and why a decree should not be made that said stock was the property and part of the assets of the estate of William H. Kern, deceased, and that said Richard F. Loper account to petitioner for the same.

The facts sufficiently appear from the opinion of the Supreme Court.

The opinion of the court below by FERGUSON, J., is reported in 4 Dist. Rep. 73.

*Error assigned,* was dismissing appellant's petition.

*Barnard Gilpin* and *John G. Johnson,* for appellant.—If Loper retained possession of assets of the testator it was the duty of the orphans' court to grant the prayer of the petition to refuse payment until the shares of stock had been returned: Brooke's App., 102 Pa. 154; Mulholland's Est., 154 Pa. 500; Watt's Est., 158 Pa. 13 ; Odd Fellows' Bank's App., 123 Pa. 356.

*J. Howard Gendell,* for appellee.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896 :

The appellant filed an account as executor of W. H. Kern, deceased, early in 1894, which came up for audit before Judge Hanna of the orphans' court in June, 1894.  Loper, the appellee, presented at the audit a claim against the estate of $2,000 which was allowed, and to which as we understand no exception has been taken.  The executor however presented his petition to the orphans' court setting forth that Loper had in his possession certain stock belonging to the estate which he refused to surrender and for which he had paid no value to the decedent in his lifetime, or to his estate since his decease, and asking that payment of the money awarded to him should be suspended until the said stocks, assets of the testator, should be delivered up to him, the executor.  An answer was filed in which Loper admitted that he had in his possession sixty-six shares of stock in the Knickerbocker Ice Company which still stood on the books of said company in the name of William H. Kern ; but he alleged that said shares belonged to him, and stated the facts out of which his title arose.  These were substantially as follows.  Loper had been the founder and organizer of a business establishment called " The Guarantors of Pennsylvania."  As such, he held, not for his own use, but for the use of the Guarantors Company, three promissory notes for money due upon subscriptions to the stock of the company given by Wm. H. Kern, Howard R. Kern and Walter R. Kern, respectively for $919.12 each.  These notes were dated on the 1st of February and were due in nine months.  The answer alleges that Howard Kern was the attorney in fact of his father who was in feeble health, and that in March, 1893, Howard indorsed

as attorney in fact the sixty-six shares of stock in the Ice Company over to him as collateral security to the three notes. In April, 1893, Wm. H. Kern died. In October following, as Loper states in his answer, Howard R. Kern agreed to turn over these shares of stock to him in consideration of the payment of the three notes due to the Guarantors Company. This was done. The shares in the Guarantors Company were then issued, not to the decedent or his executors, but to Howard R. Kern, who denies as it seems that his father or his estate is entitled to any part of them. The question raised upon these facts is whether the transfer alleged in the answer vested a title to the Ice Company stocks in the transferee good against the executor of Wm. H. Kern? It will be noticed that there is no controversy over either of the following facts:—A. that the Knickerbocker Ice stocks belonged to Wm. H. Kern; B. that they were transferred by an attorney in fact acting in the name of his principal; C. that the arrangement to appropriate them to the payment of the three notes was made about six months after the death of Wm. H. Kern and the consequent revocation of the power of attorney; D. that but one of the notes represented a debt of Wm. H. Kern, the owner of the stocks. From these facts, we think the legal conclusions are plain, and that they dispose of this case. First, death works a revocation of a simple power of attorney, and vests the title of the decedent in his executor or administrator.

The power of Howard R. Kern was therefore at an end when the arrangement for the payment of the notes was made by him, and the stocks subject to any valid pledge that may have been made of them were a part of the assets of the estate of Wm. H. Kern. Second, if the conclusion just stated was debatable, the use of this stock under the power of attorney to pay debts for which the decedent was not liable was a misappropriation of them. An attorney in fact can lawfully use the property of his principal only in the business of the principal. The use of such property for the payment of his own debt or that of any other person is not authorized by the power. In this case Loper knew of the ownership of the father. He saw the power of attorney. He was bound to know that it conferred no power on the attorney except in the business of the principal. He knew that two of the notes were not the debt of the principal. He

knew that the stock issued by him to Howard R. Kern did not go to his father's estate but to himself. He is fixed with knowledge both of the revocation of the power of attorney by the death of the maker, which he well knew, and of the misappropriation of the Knickerbocker Ice stock in making use of it to pay the debts of other persons than its deceased owner, for these debts were paid to him. The note of Wm. H. Kern could be properly secured by his attorney in fact by the pledge of his principal's property, and to that extent the decree of the court is sustained. It is reversed as to so much of the stock of the Ice Company as was applied to the payment of debts for which the owner was not liable.

If the stock in the Guarantors Company issued in exchange for Wm. H. Kern's note is claimed by Howard R. Kern, that is a question to be settled between him and the petitioner. He must restore it to his father's estate unless he can show a valid transfer from his father to himself.