## In re: Estate of Anna M. Vance, Dec'd.

468

Argued May 4, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*William S. Doty,* and with him *Thomas A. Thornton* of *Doty and Thorton* and *Fred C. Houston,* for appellant.

*W. T. Tredway,* for appellee.

Opinion by Parker, J., October 10, 1932:

Anna Mary Vance, a resident of Allegheny County, with her brother, Rev. J. L. Vance and his wife were on a Mediterranean cruise when Miss Vance became ill and was taken to a hospital in Beirut where she died

intestate July 20, 1930. She left to survive her as next of kin, her brother, Rev. J. L. Vance, and a niece, Della Vance, the appellant. There is no dispute as to the facts involved. On the day before her death Miss Vance signed and delivered to her brother a check for the entire balance which she had in a savings account in the Oakland Savings and Trust Company of Pittsburgh. At the same time she delivered the pass book to the payee. The check was in the following form:

Oakland Savings and Trust Company
Savings Department No. 26510
Pittsburgh, Pa.                                    July 19, 1930
       Pay to the order of J. L. Vance            $917.25
   Nine Hundred seventeen & 25/100 Dollars
       with interest due
No. C-6370                                 Anna M. Vance

The rules of the trust company printed in the pass book provided inter alia that all monies deposited were subject to thirty days' notice of withdrawal and that any person wishing to draw money must send the pass book and order to the bank and that the signature of the depositor to the order of withdrawal must be witnessed. The check did not comply with the rules governing withdrawals. The check was an order for the payment to Rev. J. L. Vance of the entire balance with interest which the decedent had in such trust company. After the death of Miss Vance and the return of her brother to Pittsburgh, the check and pass book were presented to the Oakland Savings and Trust Co. and payment thereof demanded. The bank refused to honor the check. Letters of administration were taken out for the protection of the bank and the proceeds paid to Rev. Vance as administrator of his sister's estate. He accounted for the fund received and on distribution claimed the balance, which represented the deposit in question, as a gift inter vivos. The

auditing judge and court in banc awarded the fund to Rev. Vance. The niece, Della Vance, has appealed and the sole question presented for our consideration is whether, under these facts, there was a valid gift inter vivos.

"We have said that after the death of an alleged donor the evidence of a gift inter vivos must be clear and satisfactory, that it must disclose an unmistakable intention on the part of the donor at the time to withdraw or surrender his dominion over the subject of the gift, that it must show unequivocally an intention to invest the donee with the right of disposition beyond the recall of the donor, that the gift must be completed by actual or constructive delivery beyond the power of revocation, that the intention of the donor must be made manifest and established by clear and precise evidence, and the delivery of the subject of the gift must be as complete as the circumstances permit. To constitute a valid gift inter vivos two essential elements must combine, an intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject and invests the donee therewith. The burden of proof is upon the one who claims the benefit of a gift *inter vivos,* and the proof must be clear and satisfactory": Turner's Estate, 244 Pa. 568, 572. "While the change of possession may be either actual or constructive, it must be such as is consistent with the nature of the property and the situation of the parties": Leadenham's Estate, 289 Pa. 216, 220. The quality and quantity of proof required to meet this obligation varies with the circumstances of a particular case. When the parties are strangers the presumption against voluntary transfers is greater than in transactions between those holding more intimate relations. See Yeager's Estate, 273 Pa. 359. "In any case, if the transfer is shown to

be complete, and the holding is alleged to be on condition, the burden then shifts to the one so asserting": Kaufmann's Estate, 281 Pa. 519, 532.

The prime question involved is whether there was such a complete delivery as complies with the essentials of a gift inter vivos and, more particularly, whether the written assignment accompanied by delivery of the pass book constitutes a constructive delivery of the bank account. This is answered by a principle laid down in the cases of Reap, Exr. v. Wyoming V. T. Co., 300 Pa. 156, and Mardis v. Steen, 293 Pa. 13: "Where manual delivery is not practicable, a transfer may be made by assignment or by other writing ...... which will indicate a present intention to pass right of possession to the donee." While the Reap case involved some questions with which we are not concerned, it authoritatively determined the legal principle that a written assignment, purporting to take effect immediately, is sufficient to indicate a present intention to pass right of possession of a savings account to a donee and constitutes a constructive delivery.

It will be observed that the assignment in writing, executed and delivered by Miss Vance, purported to transfer to the claimant at the time when delivered the entire balance standing to her credit with the trust company and that in the situation in which the parties found themselves she did everything that was possible to complete the gift. There was nothing left for the donor to do. Being many thousands of miles away and within one day of her death, it was not possible for the payee to present the book and transfer to the trust company and receive the proceeds. In fact, under the rules of the bank, he could not have secured the money until after a notice given.

This case closely resembles that of Taylor's Estate, 154 Pa. 183. There Taylor desired to give to his step-

mother the balance which he had in a bank account. Shortly before he died he sent for a Mr. Hubbert in order that he might fix up his affairs. He said he wanted to give his stepmother $650 which he had in the bank, so Hubbert drew up a check for that amount to the order of Hubbert and had it signed by the decedent by his mark. Hubbert gave the stepmother his due bill, and presented the check to the bank which refused payment because the signature was not attested. Hubbert then gave the check to the stepmother. After the death of Taylor the fund in the bank was claimed by the stepmother as a gift inter vivos. The Supreme Court said: "Nor do we think it was error to award the fund to the administrator of Mrs. Taylor (stepmother). The check was drawn upon the bank for the full amount upon deposit, under circumstances which showed that it was intended as an assignment of the fund. It did not come within the principle of that class of cases which holds that a check drawn in the ordinary form vests no title to the general funds of the drawer in the bank upon which it is drawn." While in the Taylor case a demand had been made for the fund prior to the death of Taylor, it was not in fact honored. Consequently, the claimant was in the same position as the claimant in this case in that the fund had not been actually paid over to the donee.

The argument of the appellant is based upon a distinction which has been drawn by our appellate courts between cases of the gift or attempted gift of deposits in a bank and other choses in action. "It is now well settled that a valid gift of non-negotiable securities may be made by delivery of them to the donee without assignment or indorsement in writing": Hafer v. McKelvey, 23 Pa. Superior Ct. 202; also see Huggins's Estate, 204 Pa. 167; Hani v. Insurance Co., 197 Pa. 276. In Walsh's App., 122 Pa. 177, the Supreme Court refused to extend this

principle to the transfer of a bank account by delivery of the bank book, as the bank book was regarded as on the same footing as a book of original entries and the mere delivery of it to the donee as insufficient to pass any title to the accounts appearing upon it. See Com. v. Crompton, 137 Pa. 138, 147. Consequently, something more is required to evidence the delivery or to constitute a constructive delivery of a bank deposit than the mere turning over of the pass book. Here we are not dependent for evidence on the delivery of the pass book as we have also an unconditional assignment in writing of the fund.

Counsel for appellant in his written brief states that he "stands squarely upon the law declared in Oldfield's Estate, 72 Pa. Superior Ct. 340." A comparison of that case with the one at hand discloses a marked difference. In the Oldfield case the assignment was not to take effect until a later date, was not of the entire deposit and the pass book was retained by the donor. In the instant case the facts in each of these respects were different. The assignment took place forthwith, it covered the entire deposit with interest, and the bank book was delivered to the donee. In the Oldfield case the court also held that the transfer could not be sustained as an equitable assignment. Frequently, in the consideration of questions of voluntary transfer, consideration has been given to the question as to whether they could be sustained as equitable assignments. Where the transfer has been under seal, importing consideration, it has been held good, not only as a gift inter vivos, but as an equitable assignment. The essential elements of the two kinds of transfers are different and it certainly does not follow that because a transfer would not be valid as an equitable assignment, it would not be good as a gift inter vivos. In a gift inter vivos, consideration is not an essential, while in an equitable assignment it is. As the lower

court indicates this transfer could not be sustained as an equitable assignment and we are therefore not concerned with the question of consideration.

It is also contended that there is not here a valid gift because the assignment was not in the form prescribed by the rules of the trust company. These rules, however, are for the protection of the bank. Gifts of stock certificates have been upheld without any written assignment and yet it is the almost universal practice for the by-laws of a corporation to require actual transfer upon the books of the corporation. In Taylor's Estate, supra, the bank actually refused to recognize, during the lifetime of the donor, an assignment of a savings account made by mark, but it was held a valid gift. We are all of the opinion that the written assignment accompanied by the pass book indicated a present intention to pass the right of possession to the donee, and was such a constructive delivery of the subject matter of the gift as to divest the donor of all control and dominion over the property.

The decree of the lower court is affirmed, appellant to pay the costs of this appeal.