Elliott Estate.

496

Argued May 26, 1954. Before Stern, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*Horace G. Ports,* with him *Henry B. Street* and *Fisher, Ports & May,* for appellants.

*Spencer R. Liverant,* with him *Markowitz, Liverant, Boyle, Rahauser & Kagen* and *Donald B. Waltman,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, June 28, 1954:

These appeals are from a decree of the Orphans' Court of York County. They involve the ownership of eleven joint and several certificates of deposit *found in a decedent's safe deposit box after his decease.* Six of the certificates are in the names of decedent and

his brother Paul; four are in the names of decedent and his sister Grace and one in the names of decedent and his brother Robert. In a carefully considered opinion by the learned auditing judge, it was ruled that all the certificates were owned by the decedent since no valid *inter vivos* gift was proved and the intended testamentary disposition was ineffective.

We need not recite in detail all of the facts found by the court below. It will suffice to state that named banks issued certificates of deposit certifying that decedent or a named brother or sister *"has/have deposited in said bank the sum of ————— dollars, payable to his/her/their order, on the — day of ——."* On the face of the six certificates in the joint names of Paul and the decedent is stamped "As joint tenants with right of survivorship and not as tenants in common." On the face of *four* certificates on which the name of the sister Grace appears and also on the *one* relating to the brother Robert is stamped the words "Joint owners, payable to either, and after death of one to the survivor."

It is asserted in the opinion that no appellate court decision or discussion has been found relating to *joint certificates of deposit* in the circumstances here presented. Our own research has disclosed none. The basic principles which govern other types of bank deposits are clearly applicable to certificates of deposit.

The language in these joint certificates does not conclusively establish that the survivor is the owner of the fund. As in the case of a savings deposit book, inquiry must be made concerning the facts and all of the surrounding circumstances when the certificate of deposit was obtained.

The cash certified in all the certificates of deposit was originally that of decedent. No portion belonged to any of the brothers or sister. The transaction, there-

fore, does not present a situation where a fund was held by decedent merely as custodian: *Carr Estate,* 371 Pa. 520, 92 A. 2d 213.

Since there is no evidence of a contract between decedent and his brothers and sister it requires proof of the existence of an *inter vivos* gift in order for the survivor to secure the fund.

When a bank account is opened with donor's own money and the effect of the language used is to confer upon the donee only the right to withdraw money, there is no *inter vivos* gift with right of survivorship: *Flanagan v. Nash,* 185 Pa. 41, 39 A. 818; *Zellner's Estate,* 316 Pa. 202, 172 A. 715; *Romig v. Denkel,* 326 Pa. 419, 192 A. 657; *Kata Estate,* 363 Pa. 539, 70 A. 2d 351. *Flanagan v. Nash,* supra, is perhaps the leading case in this field. In that case a person deposited her own money in a savings fund in the joint names of herself and another, under a stipulation in the deposit book reading (p. 43) : " 'Either party to draw, and in case of death of either of them, the survivor shall have full power to withdraw the deposit as if the same had been duly transferred to such survivor.' " We held that after death of the owner of the fund the survivor could not, *in the absence of any other evidence,* establish title to the fund either as a gift *inter vivos* or as a *donatio mortis causa.* We said (p. 45) : "There is nothing to show that if the defendant drew the money he could keep it as his own, and without such words no title by way of gift could pass."

In *Mader v. Stemler,* 319 Pa. 374, 179 A. 719, we held that a savings fund account in the name of the depositor or his daughter, standing alone, was insufficient to establish title to the daughter upon the decease of the father. However, in *another* account of the same decedent the parties executed an agreement that such fund belonged to them jointly and that upon the

death of either the fund should pass to the survivor. This writing was held to constitute the requisite proof of an *inter vivos* gift. Speaking through Justice LINN, we said (p. 379) : ". . . On the main question, the learned chancellor thought the case was similar in fact to Flanagan v. Nash, supra, and Grady v. Sheehan, 256 Pa. 377, 100 A. 950, in which it was held that the evidence was insufficient to establish title to the fund as a gift inter vivos. In neither of those cases was there, as in appeal No. 9, a writing signed by the parties, completely expressing the intention to vest by assignment a present joint interest in the chose in action with the right of survivorship. This distinction was noted in Mardis v. Steen, [293 Pa. 13, 141 A. 629] ; Crist's Est., [106 Pa. Superior Ct. 571, 162 A. 478], 580; Gallagher's Est., [109 Pa. Superior Ct. 304, 167 A. 476], 311.

"It is conceivable that, while invested with a joint interest in the bank's obligation, the appellant by some other contract with Stemler for the benefit of all the children may have received the money for their benefit. Plaintiffs seem to have proceeded on that theory. But the evidence is insufficient to support such a contract. The measure of proof required to show a trust of that character must be 'clear, precise and unequivocal': Washington's Est., 220 Pa. 204, 205, 59 A. 747; Hollis v. Hollis, 254 Pa. 90, 98 A. 789. In this case the evidence does not meet that measure. . . ."

See also: *Reap v. Wyoming Valley Trust Co.,* 300 Pa. 156, 150 A. 465; *Culhane's Estate,* 334 Pa. 124, 5 A. 2d 377, and *Fuller v. Fuller,* 372 Pa. 239, 93 A. 2d 462. In the case now before us there is neither a writing signed by the parties nor proof of an agreement expressing the intention to vest, by assignment, a present joint interest in the certificates of deposit with the right of survivorship. No valid *inter vivos* gift has

been proved. Our reading of the testimony coincides with the excellent summary of President Judge GROSS when he said that decedent "wanted to give away his money and keep it at the same time." Obviously decedent did not intend the alleged donees to receive these funds *until after his decease.* Such an attempted disposition, being testamentary, was rendered inoperative by the execution and probate of his will.

Decree affirmed at cost of appellants.

DISSENTING OPINION BY MR. JUSTICE BELL:

The facts were sufficient to establish a prima facie case of an inter vivos gift which was not rebutted by the administrator of the deceased donor.

Ferd S. Elliott deposited money in various banks and obtained from them the following certificates of deposit which were found in his safe deposit box after his death:

Six certificates of deposit totaling $22,500., the payees thereof being Ferd S. Elliott and Paul W. Elliott, as *joint tenants, with right of survivorship* and not as tenants in common.

Four certificates of deposit totaling $10,000., the payees thereof being Ferd S. Elliott and Grace Crawford, *joint owners, payable to either, and after death of one to the survivor.*

Another certificate of deposit was in the name of Ferd S. Elliott and Robert C. Elliott, in the sum of $11,600. *"joint owners, payable to either and after death of one to the survivor."*

Ten United States Series E savings bonds, totaling $7,200. were also found in the decedent's safe deposit box in the joint names of Ferd S. Elliott *or* Paul W. Elliott as *joint tenants with right of survivorship* and not as tenants in common.

The parties and the majority admit that United States savings bonds were payable to and the property of Paul, and the gift thereof was a valid inter vivos gift. How the Court can draw a distinction between these savings bonds and the bank certificates of deposit passes my comprehension, especially as *the majority admits that a certificate of deposit and a bank account should be subject,* so far as an inter vivos gift is concerned, *to the same principles of law.*

The language of the certificates of deposit could not possibly be clearer. They were owned by the named payees as joint tenants with right of survivorship, payable after death of one to the survivor. Do clear words and specific language no longer have any meaning? Could language more clearly show at least a prima facie ownership of the certificates in the named joint tenant who survived? Being *joint* certificates of deposit it is impossible for actual possession thereof to be held by each owner separately. It is only natural that the donor should retain the certificates in his safe deposit box. This is not a case where a donee is given merely a right to withdraw money, as in *Flanagan v. Nash,* 185 Pa. 41, 39 A. 818; *Zellner's Estate,* 316 Pa. 202, 172 A. 715; *Romig v. Denkel,* 326 Pa. 419, 192 A. 657; *Kata Estate,* 363 Pa. 539, 70 A. 2d 351; or a case of a bank depositor or donee having a fund or a certificate in the name of the depositor or his brother or sister *without survivorship or anything more,* as in *Mader v. Stemler,* 319 Pa. 374, 179 A. 719. This is a case where the certificate of deposit is in the name of the donor and his brother (or sister) as joint tenants *with right of survivorship.* Such a bank account or such a certificate of deposit creates, as it specifically says, a joint tenancy or ownership with right of survivorship, and creates in accordance with its express language a prima facie case of a present inter

vivos gift, which must prevail in the absence of clear, precise and indubitable evidence establishing a contrary intention or conclusion. See *Furjanick Estate,* 375 Pa. 484, 489, 490, 100 A. 2d 85; *Chadrow v. Kellman,* 378 Pa. 237, 106 A. 2d 594; *Fell Estate,* 369 Pa. 597, 87 A. 2d 310; *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1; *Mader v. Stemler,* 319 Pa. 374, 378, 379, 179 A. 719; *Mardis, Admrx. v. Steen,* 293 Pa. 13, 141 A. 629; *Reap, Exr. v. Wyoming Valley Trust Co.,* 300 Pa. 156, 150 A. 465; *Onofrey v. Wolliver,* 351 Pa. 18, 40 A. 2d 35; *Culhane's Estate,* 334 Pa. 124, 5 A. 2d 377; *Mori's Estate,* 318 Pa. 261, 178 A. 492; *Commonwealth v. Nolan's Estate,* 345 Pa. 98, 101, 102, 26 A. 2d 308; *Cochrane's Estate,* 342 Pa. 108, 20 A. 2d 305; *Glessner, Exrx. v. Security-Peoples Trust Co.,* 166 Pa. Superior Ct. 566, 72 A. 2d 817; *Snoder v. Lenhart,* 363 Pa. 371, 69 A. 2d 382.

In *Reap, Exr. v. Wyoming Valley Trust Co.,* 300 Pa., supra, Mary Gilligan opened a saving fund account in defendant trust company. Five years later she wrote the Company: "Please add Miss Catherine Reap name on my deposit book No. 12782 and make the account to read: *Money payable to either or the survivor of them.*"* There was no evidence to show that Catherine Reap accepted or even knew of this gift; yet this Court held that the aforesaid facts were sufficient to create a valid inter vivos gift and that at the death of Mary, Catherine was entitled to the $9,445. savings fund deposit.

That case is on all-fours with the present case and governs it.

In *Onofrey v. Wolliver,* 351 Pa., supra, where the Court considered, inter alia, the effect of a deposit in joint names and in case of death of either the bank is

---

* Italics ours.

directed to deal with survivor as sole and absolute owner thereof, the Court, speaking through Mr. Justice ALLEN M. STEARNE, said (pp. 21-22) : "We are in complete accord with the majority in the court below that *a bank account opened as a true joint account with right of survivorship ordinarily vests a present interest in the parties, and is immediately effective. In such a situation, upon the death of one of the parties, the survivor as sole and absolute owner, is entitled to the fund.* No part of the fund constitutes part of the estate of the one who dies. Where the fund had been the sole property of the deceased, *the survivor,* by virtue of the contract of deposit, *acquires it as a completed gift.* The three cases cited in the opinion of the majority of the court below are accurate expositions of the law: Mardis v. Steen, 293 Pa. 13, 141 A. 629; Reap v. Wyoming Valley Trust Co., 300 Pa. 156, 150 A. 465; Patterson's Estate, 341 Pa. 177, 19 A. 2d 165."

How it is possible to ignore that clear and pertinent language or distinguish that case from the present case, I cannot understand.

In *Cochrane's Estate,* 342 Pa., supra, Mr. Chief Justice SCHAFFER said (p. 111) : ". . . Even where one contributes the entire sum to a joint bank account, the rights of each of the tenants to the joint fund are the same, the one who made the contribution has by that act *made an immediate gift to the other*: Mader v. Stemler, 319 Pa. 374, 179 A. 719; Culhane's Est., 133 Pa. Superior Ct. 339, 2 A. 2d 567, affirmed by us, 334 Pa. 124, 5 A. 2d 377. . . ."

In *Snoder v. Lenhart,* 363 Pa., supra, a 77 year old childless widower sold his farm and deposited the proceeds, to wit, $6,377., in a savings account in his own name. Eight days later he executed an application in the usual form directing the bank to transfer this account to himself, his brother, Harry, and his nephew,

Robert, *as joint tenants with right of survivorship.*
Forty days later he died. This Court held that these
acts constituted a valid inter vivos gift and that broth-
er Harry and nephew Robert were the joint owners of
the savings account, and after the death of the original
depositor were entitled as survivors to the balance in
the account.

This case likewise rules and governs the instant case
and requires us to hold, as do the dozen other authori-
ties hereinabove cited, that a joint bank account or a
joint certificate of deposit in the name of two persons
as joint tenants with right of survivorship creates,
even when all the funds are contributed by one of the
two joint tenants, (prima facie) an immediate, valid
inter vivos gift.

For these reasons, and under the aforesaid authori-
ties, I would hold that each joint tenant was respec-
tively entitled as survivor to the certificates in which
he was named as aforesaid.

Mr. Justice MUSMANNO joins in this dissenting opin-
ion.